## Reese v. France, Appellant.

*Negligence—Automobiles—Evidence—Case for jury.*

In an action to recover damages for personal injuries caused by an automobile, the case is for the jury where the undisputed facts are that in the clear daylight and with nothing to obstruct the defendant's view, he struck an elderly woman while she was in the middle of a prominent highway, carried her body for forty feet, ran over her and then proceeded twenty-five feet further before stopping his car, although he admitted that he should have stopped his automobile within ten feet while running at top speed.

*Negligence—Damages—Medical testimony—Evidence.*

In an action to recover damages for personal injuries where the question of the degree and permanency of the plaintiff's invalidism is involved, the connection between her condition at the time of the trial, and that at the time of the accident, is a proper subject of inquiry.

Submitted Oct. 22, 1915.    Appeal, No. 120, Oct. T., 1915, by defendant, from judgment of C. P. No. 5, Philadelphia Co., Dec. T., 1912, No. 367, on verdict for plaintiff in case of Anna L. Reese v. A. Warren France.    Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.    Affirmed.

Trespass to recover damages for personal injuries. Before Martin, P. J.

At the trial it appeared that the plaintiff who was a woman, fifty-eight years old, was struck and run over by an automobile owned and operated by the defendant on June 27, 1912, at or near the intersection of State Road and Knorr street in the City of Philadelphia. John Crotts, a witness for plaintiff, who was a bystander and a witness to the accident, testified as follows: "I saw her after it hit her—how it carried her—I guess it carried her for about forty feet after it hit her and threw her off and went over top of her, and then it ran about twenty-five feet more after that." The defendant described the accident as follows:

"I started up across Knorr street, and I saw a woman walk across the street—come out from back of that shanty and had gone across the street to the far side, on the left-hand side of the trolley track, and I started to run up the street, and just as I got opposite her—before I got opposite to her—just slowly going, a wagon came down the other side, and she stopped there apparently as to wait for this wagon to go by, and as the wagon came opposite to her she turned around and ran right back across the street, and just as she was about two or three feet beyond the east rail of the trolley car track, the fender or lamp of the left-hand side of the machine hit her on the right hip."

He further testified that he was going at a slow rate of speed and that he stopped his machine within ten or twelve feet after he struck the plaintiff.

When Doctor Theodore Weisenburg was on the stand he was asked this question:

State what you found to be her condition in October, 1913? Objected to.

Objection overruled.

Exception for defendant.   (1)

A. At that time I found that the patient had a sore spot or tender spot in the lower part of her back, es-

pecially on her right side, and I found the right thigh
and leg was tender.   I found that she was not able to
move her body from right to left as well as she should.
She seemed to hold her right spine rigidly.   I found that
in the lower part of the spine—in the right thigh that the
spine was hypersensitive—more tender than it should
be.   I found she had tremors in both hands, especially in
the right hand.   I also found the reflexes prompter than
they should be, and they were prompt in her right and
left, that is all."

"Q.—Assuming that this woman had been in an auto-
mobile accident on the 27th of June, 1912, that as the re-
sult of the accident she had been hit by an automobile
and had been bruised in the small of the back, and on the
right leg, and right hip, that she had been confined to
the hospital something like three weeks as a result of
this accident, can you say whether or not her condition
as you found it at the time of this first examination
could be attributed to this accident?"

Objected to.

Objection overruled.

Exception for defendant.   (2)

"A.—I can say so, yes, sir.

"Q.—Will you say so?

"A.—Yes,  sir."

"Q.—What would be a proper treatment for the con-
dition such as she has manifested?"

Objected to.

Objection overruled.

Exception for defendant.   (3)

"A.—The first thing that ought to happen to her is a
settlement of her case, it ought to be disposed of, and
then the next thing that ought to happen to her, she
ought to be treated by different methods—massage and
electricity, but I think chiefly rest."

Verdict and judgment for plaintiff for $700.00.   De-
fendant appealed.

128, (1916).]  Assignment of Errors—Opinion of the Court.

*Errors assigned* were (1-3) rulings on evidence quoting the bill of exceptions; (7) in refusing binding instructions for defendant.

*William A. Gray,* for appellant.

*Nelson D. Warwick* and *J. Edgar Butler,* for appellee.

OPINION BY ORLADY, P. J., March 1, 1916:

The defendant admitted that he could stop his automobile within ten feet while running at top speed, yet, the undisputed facts are that in clear daylight, and with nothing to obstruct his view, he struck an elderly woman while she was in the middle of a prominent highway, carried her body for forty feet, ran over her, and then proceeded twenty-five feet further before stopping his car.

The plaintiff's testimony fairly relieves her of any charge of contributory negligence, and if that question is at all raised by the defendant's testimony, it was fully and carefully submitted by the trial judge to the only tribunal authorized by law to pass upon it, the court saying: "If the woman by stepping back in front of the machine brought about the injury, your verdict must be for the defendant": Dugan v. Lyon, 41 Pa. Superior Ct. 52.

The objection to the medical testimony is not well founded. It shows that the symptoms of the injury received in June, 1912, continued until the later examination by Dr. Weisenburg, and his testimony only explained the degree of violence she must have received when run over, and that "her condition could be attributed to this accident." The question, "what would be a proper treatment for the condition such as she has manifested?" was not inadmissible, as it tended to show the degree and permanency of her invalidism. His volunteer remark that—the first thing that ought to happen is a settlement of her case—was highly improper, and should have been stricken out on motion, but this

was not asked for by the defendant and the balance of his examination related to the character of the necessary treatment and its probable duration. The connection between her condition at the time of the trial, and that at the time of the accident, was a proper subject of inquiry under the facts as developed by the defendant.

The whole question was so fairly submitted to the jury that the only exception to the charge was the refusal to give binding instructions to find for the defendant.

The judgment is affirmed.